NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| MICHAEL A. PERO, III, | : | |
| | : | Civil Action No. 10-3107 (JAP) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WARDEN JOHN DUFFY, et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

**APPEARANCES:**

Michael A. Pero, III
170 Jackson Street
3rd Floor
Paterson, NJ  08605
        Petitioner pro se

Annmarie Cozzi
Bergen County Prosecutor's Office
Bergen County Justice Center
10 Main Street
Hackensack, NJ  07601
        Counsel for Respondents

**PISANO**, District Judge

Petitioner Michael A. Pero, III ("Petitioner"), a prisoner formerly confined at Northern

State Prison in Newark, New Jersey,[1] has submitted a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  The respondents are Warden John Duffy and the Attorney

---

[1] Petitioner was released after this Petition was filed.

General of New Jersey.

For the reasons stated herein, the Petition shall be denied.

## I.  THE INTERSTATE AGREEMENT ON DETAINERS

This matter involves a prisoner's request for trial pursuant to Article III of the Interstate Agreement on Detainers.  The Interstate Agreement on Detainers ("IAD") is a congressionally-sanctioned interstate compact among 48 states (including both New Jersey and Connecticut), the District of Columbia, Puerto Rico, the Virgin Islands, and the United States, "to establish procedures for resolution of one State's outstanding charges against a prisoner of another State." New York v. Hill, 528 U.S. 110, 111 (2000).  See also 18 U.S.C. App. II § 2; N.J.S.A. 2A:159A-1 to -15; Conn. Gen. Stat. § 54-186; Cuyler v. Adams, 449 U.S. 433, 442 (1981) ("[The IAD] is a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law.").  The IAD aims "to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints" by providing cooperative procedures among the party jurisdictions.  IAD, Art. I.

Among those procedures, Article III permits a prisoner incarcerated in one jurisdiction to initiate proceedings to bring him to trial on charges pending in another jurisdiction.  Specifically, Article III provides in pertinent part:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint:  *Provided*, That, for good cause shown in open court, the prisoner or his counsel being present, the court having

jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

(c) The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

In addition,

(a) In response to a request made under article III ... hereof, the appropriate authority in a sending State shall offer to deliver temporary custody of such prisoner to the appropriate authority in the State where such indictment, information, or complaint is pending against such person in order that speedy and efficient prosecution may be had. If the request for final disposition is made by the prisoner, the offer of temporary custody shall accompany the written notice provided for in article III of this agreement. ...

IAD, Art. V(a). Pursuant to the IAD, failure to abide by the 180-day time limit set forth in Article III requires dismissal of the indictment. IAD, Art. V(c).

Standard forms have been adopted by all signatories to the IAD. See Casper v. Ryan, 822 F.2d 1283, 1285 n.2 (3d Cir. 1987), cert. denied, 484 U.S. 1012 (1987) (citing The Council of State Governments, The Handbook on Interstate Crime Control 125-33 (1978)). The forms required in an Article III request for final disposition are:

Form 1: "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition," to be signed and dated by the warden of the custodial institution where the inmate is held, and then signed and dated by the inmate to acknowledge receipt.

Form 2: "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations, or Complaints," to be addressed to the Prosecutor in the jurisdiction where a charge is pending, signed and dated by the inmate.

Form 3: "Certificate of Inmate Status," to be signed and dated by the warden, and to include: (1) The term of commitment under which the prisoner is being held, (2) the time already served, (3) time remaining to be served on the sentence, (4) the amount of good time earned, (5) the date of parole eligibility of the prisoner, (6) the decision of the parole board relating to the prisoner, (7) the maximum expiration date under the present sentence, and (8) detainers currently on file against this inmate from the same state.

Form 4: "Offer to Deliver Temporary Custody," to be signed by the warden.

See State v. Pero, 370 N.J. Super. 203, 208 (N.J. Super. App. Div. 2004).[2]

## II. BACKGROUND

The relevant facts are set forth in the opinion of the Superior Court of New Jersey,

Appellate Division.[3]

> Here is the relevant history as appears in the record. On December 28, 2000, a grand jury indicted defendant on charges of first-degree kidnapping, N.J.S.A. 2C:13-1b; first-degree robbery, N.J.S.A. 2C:15-1; second-degree aggravated assault, N.J.S.A. 2C:12-1b(1); third-degree theft, N.J.S.A. 2C:20-3; fourth-degree unlawful possession of a knife, N.J.S.A. 2C:39-5d; and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4d. The charges were based on acts allegedly perpetrated on February 5, 2000; defendant's mother was the alleged victim.

---

[2] As noted by the Superior Court, Appellate Division,

> Instructions printed on Forms 3 and 4 provide that "[I]n the case of an inmate's request for disposition under Article III [N.J.S.A. 1A:159-3(a)], copies of [Forms 3 and 4] should be attached to all copies of Form 2." Handbook, supra, at 127, 128; see also Forms 3 and 4, as adopted both by the New Jersey Department of Corrections (DOC), N.J.A.C. 10A:10-1.4(6), and by the Connecticut DOC.

State v. Pero, 270 N.J. Super. at 208.

[3] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

Defendant was indicted on these charges in Bergen County on December 28, 2000 and was scheduled to appear for arraignment on January 22, 2001. When he failed to appear, a warrant issued for defendant's arrest. After his subsequent arrest in Connecticut on unrelated charges, the Bergen County Prosecutor forwarded a detainer to Connecticut prison officials. [FN4] Defendant was sentenced to prison in Connecticut on October 31, 2002.

> FN4. The prosecutor apparently faxed a detainer, that is, a notice of pending charges, along with a copy of the January 22, 2001 arrest warrant, first on January 31, 2001 and again on September 18, 2001.

On November 7, 2002, defendant's informal, handwritten "notice and a request for final disposition," citing Article III of the [Interstate Agreement on Detainers ("IAD")], was received by the warden of Connecticut's MacDougall-Walker Correctional Institution, where defendant was then held. The warden responded informally on November 14, advising defendant of his right to file for a trial in New Jersey and informing him that "the paperwork will be generated by Records and you will sign the necessary forms with your assigned assessment counselor." On November 19, 2002 defendant signed IAD Forms 1 and 2, provided by the Connecticut DOC as required by N.J.S.A. 2A:159A-3(c), thereby initiating his request for disposition of the New Jersey indictment. Apparently, a "records specialist" in the MacDougall-Walker facility in Connecticut partially completed Forms 3 and 4, which required the warden's signature. But those forms were not signed. The record on appeal includes unsigned Forms 3 and 4, each bearing the typed date November 1, 2002. The records specialist also prepared cover letters addressed to the Bergen County Prosecutor and the "Clerk of the Court" in Bergen County, dated November 21, 2002, purporting to attach "Forms 2, 3, and 4." Assuming that the appropriate New Jersey authorities received some documents from Connecticut "on or about" November 25, 2002 as defendant claims, he admits that "the records specialist mailed out Form 3 and Form 4 without the warden signing them."

In March 2003, defendant was transferred to a different Connecticut prison, the Garner Correctional Institution. On March 20, 2003, defendant wrote to the Bergen County Prosecutor's office, inquiring as to New Jersey's intention, enclosing a copy of his November 19 request for disposition, and alleging a 180-day deadline from that date to bring him to trial. In response to his request some four months later that Connecticut prison authorities check the status of his request for trial in New Jersey, defendant was permitted to make a telephone call to the court clerk in Bergen County. According to defendant, the clerk told him "all the paperwork is here. We are just waiting for somebody to pick you up. Everything is all set." The court clerk also faxed to defendant copies of the documents received in November from Connecticut. Defendant made copies of those documents, and on March 20, 2003 he sent a packet of material to both the Bergen County Prosecutor and the court clerk. He asked to be informed "of the

intention of the State of New Jersey regarding these outstanding matters." Finally, completed and signed Forms 3 and 4 were sent by Garner prison personnel in April and received by the Bergen County Prosecutor on April 10, 2003.

The State now appears to admit it received Forms 1 and 2, signed by defendant, in November 2002. [FN5] The record includes unsigned copies of cover letters from the Connecticut DOC to the Bergen County Prosecutor and to the "Clerk of Court, Bergen County," dated November 21, 2002, referring to "[a]ttached" "I.S.D. Forms 2, 3, 4." The record also includes unsigned copies of Forms 3 and 4, dated November 21, 2002, certifying defendant's commitment to MacDougall-Walker and his incarceration for the preceding 853 days. However, the only signed Forms 3 and 4 are dated April 3 and 2, respectively, and certify defendant's then current commitment at Garner and his incarceration in Connecticut for the preceding 1041 days. The State plainly did not receive Forms 3 and 4, signed by the warden, until after April 3. [FN6]

> FN5. The assistant prosecutor appears to have apologized to the court for a misstatement in his brief, in which he had said that the State received only Form 1, and not Form 2, in November, although in later argument he claims only to have admitted that defendant signed Form 2 in November. The distinction is not material to our decision.

> FN6. The signed copies of Forms 3 and 4 in the record appear under the heading of the Garner prison facility, to which defendant was moved for the first time in March 2003, whereas the unsigned Forms 3 and 4 bore the heading of the MacDougall-Walker facility, where defendant was incarcerated in November 2002.

For purposes of this motion, and our review, we will assume that the State received unsigned copies of Forms 3 and 4 in November. Thus the only issue before us is whether the 180-day period prescribed by the IAD was triggered by the Prosecutor's receipt of signed Forms 1 and 2 and unsigned Forms 3 and 4 in November, or whether the State's time to bring defendant to trial ran only from its April 10 receipt of all four completed forms, including those signed by the Connecticut authority on April 2 and 3.

The history thereafter is not in issue. The Law Division judge remanded defendant without bail on June 9, 2003. On July 10, the judge ordered a psychiatric exam to determine defendant's competence to stand trial, to represent himself, to waive an insanity defense, and whether he was a danger to himself or others. An August 11 trial date was set in that order. The record indicates that on August 11, the court accepted a psychiatric report determining defendant's competence to stand trial and to represent himself, and that he was not a danger to himself or others.

Defendant's motion to dismiss pursuant to the IAD also was argued on August 11, at which time the judge set September 9 for a status review and September 29 as the trial date. The judge's written letter decision denying defendant's motion was dated September 16, 2003. [FN7] The motion judge found that April 10, 2003 was the date that triggered the 180-day window within which the State had to bring defendant to trial under Article III.

> FN7. Although we cannot determine from the record how the judge came to reschedule the trial thereafter to December 24, defendant does not contend that he is entitled to dismissal based on proceedings after June 9 or any subsequent adjournment.

> We have previously held that the State may seek a continuance even after expiration of the 180-day period, so long as an order dismissing the indictment has not yet been entered. [Citations omitted.]

The thrust of defendant's argument in the Law Division in support of his motion to dismiss the indictment was that the IAD required New Jersey to bring him to trial within 180 days of receiving his request for "final disposition"' that he submitted the required written form request to invoke the IAD to Connecticut prison authorities on November 19, 200[2]; that certain of the required forms were mailed to the Bergen County Prosecutor's office on November 21, 2002 and received in that office on November 25, 2002; that he was not brought to court in New Jersey until June 9, 2003; and that because he was not brought to trial within 180 days of his request, [FN8] the indictment must be dismissed.

> FN8. Counting from November 25, the 180th day would have been May 24, 2003.

State v. Pero, 370 N.J. Super. 203, 208-212 (N.J. Super. App. Div. 2004) (emphasis in original).

Ultimately, relying on Fex v. Michigan, 507 U.S. 43 (1993), and its progeny, the Appellate Division held that "an effective Form 2 request for disposition must include completed and signed Forms 3 and 4, and that the IAD demands strict compliance with its procedures," 370 N.J. Super. at 222, and affirmed the order denying Petitioner's motion to dismiss the indictment. The Appellate Division explicitly placed on the prisoner initiating an IAD request the "practical and legal burdens" to ensure the warden's compliance and the receipt by the prosecutor of a complete IAD package. 370 N.J. Super. at 221. In addition, the Appellate Division explicitly

declined to impose on the prosecution in the receiving state any duty to investigate when it receives an incomplete package. Id. at 222. Thus, the triggering date for Petitioner's 180-day time limit was April 10, 2003, "the earliest date the evidence established that [Petitioner's] completed application, including all required, signed forms, was received by Bergen County authorities." Id. at 223-24.

Petitioner thereafter filed a motion for leave to appeal to the Supreme Court of New Jersey. By Order filed September 23, 2004, the Supreme Court of New Jersey denied leave to appeal.[4]

Pursuant to a jury trial, Petitioner was convicted in 2005 of the lesser-included offenses of third-degree criminal restraint, N.J.S.A. 2C:13-2a, on count one; second-degree robbery, N.J.S.A. 2C:15-1, on count two; third-degree aggravated assault, N.J.S.A. 2C:12-1b(7), on count three; and fourth-degree joyriding, N.J.S.A. 2C:20-10b, on count four. The jury also convicted defendant of fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5d, on count five; and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4d, on count six. The trial court judgment of conviction was entered on March 17, 2005.[5] Petitioner filed a direct appeal of the conviction. On direct appeal, Plaintiff raised again his IAD claim. The Appellate Division summarily rejected the claim, relying on its prior decision in Petitioner's interlocutory appeal. See State v. Pero, No. A-4563-04T4, 2009 WL 2059740, *4 (N.J. Super. App.Div. July 17, 2009). The Supreme Court of New Jersey denied certification on October 28, 2009. See State v. Pero, 200 N.J. 477 (2009).

---

[4] On November 23, 2004, Petitioner submitted to this Court a petition for writ of habeas corpus, raising claims that his trial violated the IAD. See Pero v. Duffy, Civil Action No. 04-5927 (D.N.J.). By Opinion and Order [22, 23] entered June 26, 2007, this Court denied that petition without prejudice for failure to exhaust state remedies. Petitioner returned to this Court following exhaustion of his state remedies on direct appeal.

[5] Petitioner's original aggregate sentence was fifteen years imprisonment, subject to a five-year parole disqualifier. A resentencing hearing took place on January 21, 2010, at which time the court sentenced Petitioner to a ten-year term of imprisonment.

Following the denial of relief on direct appeal, Petitioner filed this federal Petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Here, Petitioner asserts several grounds for relief, all arising under the Interstate Agreement on Detainers, and all essentially asserting that the 180-day period pursuant to the Interstate Agreement on Detainers, in which to bring him to trial from Connecticut, was triggered when the New Jersey prosecutor first received Petitioner's (incomplete) request for final disposition, and was not tolled for "technical" defects in the application that were not the fault of Petitioner. As a gloss on this basic argument, Petitioner asserts that the state courts erred in holding further that the onus was on Petitioner to oversee the IAD process to ensure the completeness of his application package, that the New Jersey prosecutor had no responsibility to investigate an incomplete application package, and that administrative errors could relieve the New Jersey prosecutor of his duty to comply with the IAD. Briefing is complete and this matter is now ready for decision.

## III. 28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> With respect to any claim adjudicated on the merits in state court proceedings, the writ

shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).

A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. See also Moore v. DiGuglielmo, No. 09-2189, 489 F.App'x 618, 624 n.2 (3d Cir. 2012) (noting the same). To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. "This standard … is 'difficult to meet': To obtain habeas corpus relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Metrish v. Lancaster, 133 S.Ct. 1781, 1786-87 (2013) (quoting Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011)). In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002) and Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a *pro se* pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A *pro se* habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

IV.  ANALYSIS

Petitioner asserts the following grounds for federal habeas relief, all of which were exhausted in state court:

> THE 180 DAY PERIOD PURSUANT TO THE INTERSTATE AGREEMENT ON DETAINERS IN WHICH TO BRING THE DEFENDANT TO TRIAL FROM CONNECTICUT WAS TRIGGERED WHEN THE PROSECUTOR RECEIVED THE DEFENDANT'S REQUEST FOR FINAL DISPOSITION AND WAS NOT TOLLED FOR TECHNICAL DEFECTS IN THE APPLICATION THAT WERE NOT THE FAULT OF THE DEFENDANT, CONTRARY TO THE INTERLOCUTORY DECISION IN STATE V. PERO, 370 N.J. SUPER. 203 (2004). . . .
>
> STATE COURT'S UNPRECEDENT DIGRESSION FROM ESTABLISHED I.A.D. GUIDELINES IN THE PERO HOLDING THAT "ONUS IS ON DEFENDANT NOT PARTY STATES FOR OVERSEEING ENTIRE I.A.D. PROCESS FROM HIS PRISON CELL" ... "AND THAT DEFENDANT IS TO BE SADDLED WITH CONSEQUENCES OF ALL ADMINISTRATIVE

DEFECTS DESPITE UNEQUIVOCALLY COMPLYING WITH ALL I.A.D. PROCEDURES" IS BOTH UNCONSTITUTIONAL AND CONTRARY TO ESTABLISHED PRINCIPALS OF THE INTERSTATE GREEMENT ON DETAINERS ACT. . . .

STATE COURT'S HOLDING IN PERO THAT "UPON RECEIVING DEFENDANT'S SIGNED REQUEST FOR DISPOSITION (ALONG WITH ALL REQUIRED I.A.D. FORMS), PROSECUTOR WAS NOT REQUIRED OR RESPONSIBLE UNDER THE I.A.D. TO INVESTIGATE ADMINISTRATIVE DEFECTS TO HIS OWN DETAINER AND SEEK MORE INFORMATION ON DEFENDANT'S RECEIVED REQUEST FOR DISPOSITION IS BOTH UNCONSTITUTIONAL AND CONTRARY TO THE I.A.D. ACT. . . .

STATE COURT'S HOLDING IN PERO, THAT DESPITE PROSECUTOR RECEIVING DEFENDANT'S SIGNED RQUEST FOR DISPOSITION ALONG WITH ALL REQUIRED I.A.D. FORMS, ANY ADMINISTRATIVE ERRORS NO MATTER HOW INCONSEQUENTIAL RESULT IN THE WHOLE SALE ABANDONMENT OF THE E3NTIRE I.A.D. ACT AND OBLIGATIONS OF PARTY STATES OFFICIALS TO COMPLY WITH I.A.D. PROCEDURES, AND ALL OF ESTABLISHED RIGHTS AND PROTECTIONS AFFORDED TO DEFENDANT UNDER THE I.A.D. ARE THEREBY ABANDONED, IS BOTH UNCONSTITUTIONAL AND CONTRARY TO ESTABLISHED PRINCIPALS OF THE I.A.D. AND LAWS OF THE UNITED STATES. . . .

(Petition, ¶ 12.)  More specifically, as noted above, Plaintiff argues that the 180-day Article III deadline expired on May 24, 2003, 90 days after he contends the prosecutor received his incomplete package on November 25, 2002, and that he was not brought to court until June 9, 2003, <u>sixteen</u> days later.  Plaintiff does not appear to challenge any subsequent delays in the trial proceedings.

The Appellate Division undertook an exhaustive survey of state and federal cases raising claims similar to those of Petitioner and rejected Petitioner's arguments in their entirety.

We have carefully considered the record and the briefs in light of applicable law. We are convinced that the 180-day period prescribed by Article III of the IAD began to run only when New Jersey authorities received completed and signed Forms 3 and 4 on April 10, 2003. We therefore affirm the order denying defendant's motion to dismiss the indictment.

Our research has not revealed any case in any state or federal jurisdiction addressing the specific question before us: whether receipt of a prisoner's Request

for Disposition (Form 2), accompanied by unsigned copies of Form 3 and/or Form 4, constitutes an effective request for disposition that triggers the 180-day period. We therefore look to the underlying purpose of the IAD and judicial interpretations of its requirements to inform our decision.

As a "congressionally sanctioned interstate compact," the interpretation of the IAD "presents a question of federal law." Cuyler v. Adams, 449 U.S. 433, 442, 101 S.Ct. 703, 709, 66 L.Ed.2d 641 (1981). "[T]he IAD comes within the Compact Clause of the U.S. Constitution, art. I, § 10, cl. 3 ('No State shall, without the Consent of Congress, ... enter into any Agreement or Compact with another State ....'), and is thus a federal law subject to federal interpretation." U.S. v. Paredes-Batista, 140 F.3d 367, 372 n. 9 (2d Cir.), cert. denied, 525 U.S. 859, 119 S.Ct. 143, 142 L.Ed.2d 116(1998). Federal court interpretations of the IAD, which was enacted in virtually identical form by Congress, 18 U.S.C.A. App. 2, as well as by New Jersey and Connecticut, is binding upon state courts.

In Fex v. Michigan, [507 U.S. at 43], a majority in the Supreme Court resolved the question whether the Article III 180-day period began to run on the date the prisoner's request for trial was mailed by the sending state, or on the date it was received by the prosecutor in the receiving state. The Court parsed the meaning of the phrase "within one hundred and eighty days after he shall have caused to be delivered," as it appears in Article III (and in N.J.S.A. 2A:159A-3(a)), and held that "delivery is the key concept." Id. at 49, 113 S.Ct. 1089, 122 L.Ed.2d at 414 (emphasis added). The Court rejected the argument that the phrase "caused to be delivered" referred to the date the prisoner initiated the process by submitting his request to the prison authorities in the sending state.

The Supreme Court addressed the practical effect of the two interpretations and considered the "worst case scenario" under each. Whereas the Court recognized that the actions of a malicious or careless warden under a delivery-date rule would produce a bad result in that a prisoner might "spend several hundred additional days under detainer" with a concomitant delay in reaching trial, the Court nevertheless concluded that a mailing-date rule would produce a worse result: "the prosecution will be precluded before the prosecutor even knows it has been requested." 507 U.S. at 50, 113 S.Ct. at 1090, 122 L.Ed.2d at 414. While the Court's decision in Fex v. Michigan does not resolve the precise question raised in this case, that is, whether receipt of unsigned Forms 3 and 4 trigger the 180-day limit, its rationale supports our decision.

Well before the Supreme Court decided Fex, we held that the 180-day time limit was triggered only by receipt of the requisite request forms by the New Jersey prosecutor and the New Jersey court, and not by the prisoner's delivery of a request to out-of-state prison authorities. State v. Ternaku, 156 N.J.Super. 30, 34, 383 A.2d 437, 439 (App.Div.), certif. denied, 77 N.J. 479, 391 A.2d 494 (1978). Our rationale in Ternaku was much like that later expressed by the Supreme Court in Fex.

In our view it would be contrary to the public interest to start the running of the 180-day period prior to actual receipt of the notice and request by the prosecutor and the court. If we were to interpret the statute as defendant requests, an indictment would be subject to dismissal each time delivery of the documents to the prosecutor and court is delayed, regardless of cause. We cannot conceive our Legislature as intending such a result by enacting the Interstate Agreement on Detainers.

[ Ibid.]

See also State v. Stiles, 233 N.J.Super. 299, 558 A.2d 1333 (App.Div.1989) (requiring "strict" compliance with the IAD's prescribed procedures and holding that receipt of unsigned Form 2, without a "certificate of inmate status" [Form 3], does not trigger the 180-day deadline).

. . .

In another decision pre-dating Fex, the Third Circuit affirmed the denial of a habeas corpus petition that was based on an alleged violation of the IAD. Casper v. Ryan, supra, 822 F.2d at 1283. In its opinion, the court reviewed the procedure for a prisoner to initiate trial in another state and emphasized the importance of Forms 3 and 4:

Article III(a) of the IAD requires that the request of the prisoner for final disposition "shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner," which is the same language used in Article IV(b) to describe the information needed. Forms 3 and 4, which are used when proceedings have been initiated by the prosecutor from another jurisdiction under Article IV, must also be attached to Form 2, used when an inmate requests disposition under Article III.

[ Id. at 1285 (emphasis added).]

In Casper, a Florida prisoner sent a notarized letter to the Philadelphia District Attorney's office, but his letter did not include Form 3, "which the statute provides must accompany the prisoner's request for disposition of outstanding charges." Id. at 1285-86. The court found "persuasive reasons for requiring a prisoner to comply with the procedures required by Article III(a) as a predicate

for invoking Article V(c)'s severe sanction of dismissal with prejudice." Id. at 1292. Nonetheless, in dictum, the court suggested that "[s]trict compliance with Article III may not be required when the prisoner has done everything possible, and it is the custodial state that is responsible for the default." Id. at 1293. We question the viability of that suggestion after Fex.

In United States v. Dent, 149 F.3d 180 (3d Cir.1998), the Third Circuit addressed the dictum in Casper with respect to a prisoner's obligation to comply strictly with Article III. The Court held that the prisoner's letter request for disposition did not trigger the 180-day limit because he omitted information concerning "his term of commitment, the time already served, the time remaining to be served on his sentence, or any information concerning good-time credits or parole eligibility" (the very information normally provided on Form 3). This was so even though the prosecutor already had most of the information, and even though the prison warden had failed to meet his obligations under Article III. Id. at 186-87. The court nonetheless recognized, as it had in Casper, a potential exception to the rule of strict compliance if the prisoner can show that "she/he substantially complied to the extent possible." Id. at 187 (quoting Casper v. Ryan, supra, 822 F.2d at 1293). We do not find circumstances here that warrant such a theoretical exception.

. . .

Several circuit courts have rejected defense motions to dismiss an indictment for IAD violations, even where either prison officials or procedures have impeded a prisoner's ability to request disposition. In United States v. Paredes-Batista, supra, 140 F.3d at 375-76, the Second Circuit held that despite the inadequacy of the federal government's form speedy trial request, which did not inform the defendant of the IAD's delivery requirement, and even though the defendant, "incarcerated in state prison, would not have been in a position to personally ensure delivery to either [the prosecutor or the court], informing him of these prerequisites would at least have permitted him to monitor and police his speedy trial rights." Id. at 373. In several cases involving prison officials' failure to provide a defendant with the Article III notice of his right to seek disposition in another jurisdiction, courts have declined to extend the dismissal sanction, reading the IAD narrowly and limiting that remedy to prosecutorial failure to act after receiving a prisoner's request. See, e.g., United States v. Lualemaga, 280 F.3d 1260, 1263-64 (9th Cir.), cert. denied, 536 U.S. 949, 122 S.Ct. 2641, 153 L.Ed.2d 820 (2002); United States v. Walker, 255 F.3d 540, 542-43 (8th Cir.2001); United States v. Pena-Corea, 165 F.3d 819, 821-22 (11th Cir.1999); Lara v. Johnson, 141 F.3d 239, 243 (5th Cir.1998) ("[D]ismissal because of negligence on the part of the sending state is not a part of the IAD"), mod. on other grounds, 149 F.3d 1226 (5th Cir.1998).

In Pena-Corea, supra, the court said: "The question here is whether the Government should be held responsible for the state custodian's failure to serve

15

Pena with the federal detainer and to advise him of his right to demand a trial. We think not." 165 F.3d at 821. ...

It is of course true that the IAD provides that it "shall be liberally construed so as to effectuate its purposes." N.J.S.A. 2A:159A-9. The stated purposes of the IAD are "to encourage the expeditious and orderly disposition" of charges against "persons already incarcerated in other jurisdictions" and "to provide ... cooperative procedures" among its party states to that end. N.J.S.A. 2A:159A-1. We do not, however, interpret the prescribed liberal construction of the compact to mean that courts must favor the prisoner by applying the doctrine of substantial compliance. See State v. Moe, 581 N.W.2d 468, 472 (N.D.1998) ("Strict compliance with the notice provisions of the IAD is required.... [A]ctual notice of the prisoner's request alone does not put the State on notice of the information that would be included in the certificate of the official having custody of the prisoner." Id. at 471.)

We recognize that a prisoner has limited power to insure his warden's efficient and complete cooperation with the requirements of the IAD. Nonetheless, it does not seem unduly harsh to place both practical and legal burdens on the prisoner who seeks to force another jurisdiction to bring him to trial within 180 days, on threat of dismissal for failure to meet that deadline.

The practical burden on the prisoner is to follow up his attempted delivery of a complete disposition request, that is, Forms 2, 3, and 4, by periodically checking with the warden and the out-of-state prosecutor. The legal burden upon a defendant is to prove actual receipt by the prosecutor and the court in the State where the inmate seeks a prompt disposition. Most jurisdictions that have considered the placement of either of those burdens since Fex have held that it is the defendant's burden to follow up on delivery and to prove receipt of the required forms.

There is no reason to think that by joining the compact, the New Jersey Legislature or any other party state's legislature intended to allow its own prosecution of a defendant to be at risk, solely based upon the efficiency or inefficiency of prison officials in other states. The intent and rationale for enacting the IAD was to counter the perceived evil when prosecutorial delay or inattention fail to provide a defendant incarcerated in another jurisdiction an opportunity for prompt disposition of charges. Such delay potentially prejudices a prisoner's opportunities and even his potential for concurrent sentences.

It does not serve either the legislative intent behind the IAD, or the public interest, for courts to dismiss an indictment where the prosecuting authority is not in violation of the compact. The deterrent effect of the IAD is not impaired by this recognition. The prosecutor remains at risk of dismissal for an unwarranted delay after receiving a valid, complete application for disposition.

We decline to impose upon the prosecution in the receiving state a greater duty than that expressly required by the IAD itself. We therefore reject defendant's contention that the Bergen County Prosecutor had an affirmative duty to investigate and seek more complete information, assuming unsigned IAD forms were received in November.

Neither the State nor the prisoner appears to have been responsible for the delay here; a lack of attention on the part of the Connecticut prison authorities at the MacDougall-Walker facility prevented prompt completion of the required forms and their delivery to the Bergen County Prosecutor and the court in November 2001. Unquestionably, it would have been appropriate and indeed salutary for the prosecutor's office to inquire of the Connecticut prison authorities if incomplete or unsigned Forms 3 and 4 were received along with the prisoner's request for disposition. We merely stop short of holding that the prosecutor's failure to make inquiry in this case results in the running of time under Article III.

We are convinced that an effective Form 2 request for disposition must include completed and signed Forms 3 and 4, and that the IAD demands strict compliance with its procedures. For example, it has been held that where proper forms were delivered to the prosecutor but not to the court in the receiving state, the Article III time limit was not triggered. Likewise, where the court but not the prosecutor received the required forms, the time limit also was not triggered. ...

Defendant argues before us that "the failure of the warden to sign the last two documents [in November] is irrelevant because I can't be denied my rights once I get my notice." We disagree. We are satisfied that an individual who is incarcerated in another state that is a party to the IAD is adequately protected by the opportunity to check on the status of his own request, as defendant did here, and thereby to discover any failure to act in a timely fashion. The triggering date for New Jersey's 180-day time limit in this case, as the Law Division judge found, was April 10, 2003, the earliest date the evidence established that defendant's completed application, including all required, signed forms, was received by Bergen County authorities.

State v Pero, 370 N.J. Super. at 214-224 (citations and footnotes omitted).

"IAD violations are cognizable in federal habeas corpus because the IAD is a 'law of the United States' for purposes of 28 U.S.C. § 2254." McCandless v. Vaughn, 172 F.3d 255, 263 (3d Cir. 1999) (citing Reed v. Farley, 512 U.S. 339, 347 (1994)). It does not follow, however, that every violation of the IAD entitles one to federal habeas relief.

As a general rule, "'collateral relief is not available when all that is shown is a failure to comply with the formal requirements' of a rule of criminal procedure in

the absence of any indication that the defendant was prejudiced by the asserted technical error." Davis v. United States, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974) (quoting Hill v. United States, 368 U.S. 424, 429, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962)). "[T]he appropriate inquiry [is] whether the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether '[i]t ... present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" Id. (quoting Hill, 368 U.S. at 428, 82 S.Ct. at 471).

Casper v. Ryan, 822 F.2d 1283, 1288 (3d Cir. 1987). In Casper, therefore, the Court of Appeals held that a delay of less than one month beyond the 180-day limit of Article III was not such a fundamental defect that a federal court was required to grant habeas relief. See 822 F.2d at 1290-91 (noting that it was "significant" that Casper "did not allege that the claimed IAD violation prejudiced his ability to defend at trial or the circumstances of his incarceration").

Similarly, here, the sixteen-day delay that is the subject of Petitioner's claims is not such a fundamental defect that it should entitle Petitioner to federal habeas relief, especially where Petitioner has alleged no prejudice flowing from the purported delay.

In any event, Petitioner has failed to establish that the decision of the Appellate Division -- that the Article III 180-day period ran from the prosecutor's receipt of the complete notice package on April 10, 2003 -- was contrary to or an unreasonable application of controlling Supreme Court precedent. The Appellate Division correctly identified Fex as the only Supreme Court opinion providing any guidance regarding the interpretation of the notice provisions of the IAD. Although Fex is not controlling with respect to the precise notice issue presented here, the Appellate Division's decision is consistent with the Fex conclusion requiring strict compliance with the IAD notice provisions in other factual contexts. Moreover, in the years since the Appellate Division issued its interlocutory decision in this matter, several Circuit Courts of Appeals have similarly applied Fex to require strict compliance with the IAD notice provisions in order to start the 180-day clock running, imposing on prisoners the duty to ensure receipt of

the complete notice package by the appropriate authorities in the non-custodial jurisdiction.  See, e.g., U.S. v. Washington, 596 F.3d 777 (10th Cir. 2010) (collecting cases); U.S. v. Dooley, 580 F.3d 682 (8th Cir. 2009); U.S. v. Thomas, 342 F.App'x 891 (4th Cir. 2009); U.S. v. Brewington, 512 F.3d 995 (7th Cir. 2008); U.S. v. White, 185 F.App'x 504 (6th Cir. 2006).  Accordingly, Petitioner is not entitled to federal habeas relief.

## V.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

## VI.  CONCLUSION

For the reasons set forth above, the Petition shall be denied.  An appropriate order follows.


Dated: December 16, 2013                                    /s/ Joel A. Pisano
                                                           JOEL A. PISANO, U.S.D.J.